UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------- X
DAWN CORRIGAN, CAITLIN CORRIGAN,
and AMBER CORRIGAN,                                          Civil Action No.:

                 Plaintiffs,

   -against-
                                                    COMPLAINT

TOWN OF BROOKHAVEN, THERESA TREJO,
ED ROMAINE, and NEIL FOLEY,

               Defendants.                                          JURY TRIAL DEMANDED
-------------------------------------- X

      Plaintiffs DAWN CORRIGAN, CAITLIN CORRIGAN, and AMBER CORRIGAN for their original complaint allege as follows:

## NATURE OF THE CLAIM

1. This is a case about the gross abuse of power that resulted in the unconstitutional, illegal, and improper removal of plaintiffs from their home, the subsequent condemnation of their home, and the loss of their home and personal property.

2. Plaintiffs DAWN CORRIGAN (hereinafter referred to as "DAWN"), CAITLIN CORRIGAN (hereinafter referred to as "CAITLIN"), and AMBER CORRIGAN (hereinafter referred to as "AMBER") have resided in their home at 59 Chestnut Avenue, Patchogue, New York for many years.

3. The CORRIGAN family were peacefully residing in their home when the defendants brought the awesome power of the State upon the innocent family.

4. On or about August 11, 2019, defendant THERESA TREJO (hereinafter referred to as "TREJO") was an employee of defendant, TOWN OF BROOKHAVEN (hereinafter

referred to as "TOB"). On that date, TREJO appeared at the plaintiffs' home, illegally gained entry into the plaintiffs' dwelling, conducted and illegal search and summarily condemned the plaintiffs' home without just cause.

5. Thereafter, plaintiff DAWN confronted both TOB Town Supervisor ED ROMAINE (hereinafter referred to as "ROMAINE"), and TOB Town Councilmember NEIL FOLEY (hereinafter referred to as "FOLEY") regarding the egregious, illegal, improper, and devastating actions of TREJO in violating the rights of the plaintiffs. Both ROMAINE and FOLEY voiced their support for the actions taken by TREJO in violating the rights of the plaintiffs.

6. The acts of the defendants were wholly and completely without justification or provocation. As a result of the defendants illegally and improperly using the awesome power of the government, plaintiffs were forced to leave their home for a period of time and most of their home remains condemned to this day. The entire ordeal has caused plaintiffs to also suffer from depression, anxiety, emotional distress, and fear of the government.

7. This action arises under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 USC § 1983, 42 USC § 1985, 42 USC § 1988.

### JURISDICTION AND VENUE

8. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1332, 1343(a), 1367(a) and 42 U.S.C. §1983.

9. Venue lies in this Court pursuant to 28 U.S.C. §1391.

**THE PARTIES**

10. Plaintiff DAWN is a resident of the State of New York. At all times relevant plaintiff DAWN resided in Suffolk County, New York. Plaintiff DAWN has suffered from extreme emotional distress, mental anguish, physical pain, and suffering since the unconstitutional removal of herself and her family from their home based upon the malicious acts of the defendants. Plaintiff DAWN was in general good health at the time leading up to the illegal removal of her and her family from their home.

11. Plaintiff CAITLIN is a resident of the State of New York. At all times relevant plaintiff CAITLIN resided in Suffolk County, New York. Plaintiff CAITLIN has suffered from extreme emotional distress, mental anguish, physical pain, and suffering since the unconstitutional removal of herself and her family from their home based upon the malicious acts of the defendants. Plaintiff CAITLIN was in general good health at the time leading up to the illegal removal of her and her family from their home.

12. Plaintiff AMBER is a resident of the State of New York. At all times relevant plaintiff AMBER resided in Suffolk County, New York. Plaintiff AMBER has suffered from extreme emotional distress, mental anguish, physical pain, and suffering since the unconstitutional removal of herself and her family from their home based upon the malicious acts of the defendants. Plaintiff AMBER was in general good health at the time leading up to the illegal removal of her and her family from their home.

13. Defendant TOB is a town located in Suffolk County and is governed by the laws of the State of New York. TOB is a municipality charged with the administration of matters regarding its residents.

14. Defendant TREJO is an employee of defendant TOB. Defendant TREJO is responsible for the just and fair administration of services and violations for defendant TOB. At all

times relevant, defendant TREJO was acting both, individually, and within the scope of and in furtherance of her employment. Defendant TREJO is sued both individually and in her official capacity.

15. Defendant ROMAINE is the TOB Town Supervisor. Defendant ROMAINE is responsible for the just and fair administration of services and violations for defendant TOB. At all times relevant, defendant ROMAINE was acting both, individually, and within the scope of an in furtherance of his employment. Defendant ROMAINE is sued both individually and in his official capacity.

16. Defendant FOLEY is the TOB Town Councilman. Defendant FOLEY is responsible for the just and fair administration of services and violations for defendant TOB. At all times relevant, defendant FOLEY was acting both, individually, and within the scope of an in furtherance of his employment. Defendant FOLEY is sued both individually and in his official capacity.

## JURY DEMAND

17. Plaintiff demands trial by jury in this action pursuant to the Seventh Amendment.

## FACTS

18. The plaintiffs have been residing in their home located at 59 Chestnut Avenue, Patchogue, in the Town Of Brookhaven, New York since 2006.

19. On or about the afternoon of August 11, 2019, TOB employee TREJO appeared at the plaintiffs' residence.  At the time, plaintiffs DAWN and AMBER  were out of town in New Jersey.

20. Defendant TREJO was called to the plaintiffs' home by a Suffolk County Police Officer (hereinafter referred to as "SCPO"). The SCPO was called to the plaintiffs' residence by CAITLIN because a former tenant had appeared at the plaintiffs' home attempting to

4

break into the plaintiffs' home with a hammer.

21. After verifying that the former tenant no longer resided at the property, the SCPO called the TOB to request that TOB personnel appear at the plaintiffs' home because the SCPO observed that there were what she claimed to be multiple apartments in the house.

22. Shortly thereafter, on the same day, defendant TREJO appeared at the plaintiffs' home.

23. Shortly before TREJO arrived at the plaintiffs' home, Tina Orosco had come to the plaintiffs home out of concern for the safety of the CAITLIN, who was home alone at the time the former tenant attempted to break into the home.

24. Tina Orosco is the former spouse of DAWN, and the parent of CAITLIN and AMBER. Ms. Orosco use to live at the plaintiffs' home but had not resided there since 2010. Unbeknownst to Ms. Orosco, an arrest warrant was issued for her arrest stemming from a violation of a TOB town code that had already been resolved by DAWN years prior.

25. Upon TREJO, arriving at the plaintiffs' residence, she conferred with the SCPO and at that time had obtained information regarding the outstanding warrant for Ms. Orosco.

26. As TREJO approached the premises, Ms. Orosco stopped her in the driveway and asked TREJO to identify herself. TREJO explained to Ms. Orosco that she was an employee of TOB, and requested that Ms. Orosco grant TREJO permission to enter the home.

27. Ms. Orosco refused to grant TREJO permission to enter the home. At that time, TREJO signaled to the SCPO, who then came up to Ms. Orosco and informed her that she was being placed under arrest for the outstanding warrant.

28. After Ms. Orosco was arrested and taken away by the SCPO, TREJO entered the basement of the plaintiffs' home, without a warrant or permission, and conducted a search of the basement of the plaintiffs' home.

29. Immediately after conducting the search of the plaintiffs' basement portion of the home,

TREJO walked to the front of the home seeking to obtain entry to the main level of the dwelling that was not accessible from the basement.

30. At that time CAITLIN was sitting on the front stoop. Defendant TREJO approached CAITLIN and stated that nobody is allowed to be inside the home.

31. TREJO had placed a notice of condemnation on the plaintiff's home and falsely stated to CAITLIN that the posted notice gave defendant TREJO the authority to enter and search the entire home of the plaintiffs.

32. Subsequently, defendant TREJO called the Suffolk County Police to have the police present when she entered into the plaintiff's home. Thereafter, TREJO illegally without a warrant or other justification entered the plaintiffs' home to conduct a search.

33. Upon entering and searching the plaintiff's home, defendant TREJO reiterated to CAITLIN that nobody can occupy the home, and the plaintiffs had to vacate the premises.

34. After being informed of the TOB order to vacate the premises, DAWN and AMBER returned home and the plaintiffs vacated the premises pursuant to the unlawful order of the defendants.

35. Plaintiffs remained out of their home for more than a day.

36. Although the plaintiffs returned to their home after more than a day, defendant TREJO improperly condemned most of the plaintiff's home and instructed plaintiff that nobody is allowed to inhabit the condemned areas. The condemnation of the plaintiffs' home continues to this day.

37. All of the actions of the defendants directly contributed to the illegal search and seizure of the plaintiffs' home and the illegal removal of the plaintiff and her children from their home.

38. There were no emergency or exigent circumstances that permitted the entry into the plaintiffs' home without a warrant, nor was the condition of the home in such disrepair as to warrant a condemnation and immediate removal of the occupants from the home, in fact the home was in immaculate and pristine condition.

39. The plaintiffs were not afforded any federal procedural due process protections, including not being granted a pre-deprivation hearing, nor did the defendants follow any of the town code provisions to remove the plaintiffs on an emergency basis.

40. As such, the defendants did not have a legal basis to condemn the property, nor did they follow the proper procedures to lawfully condemn the property and remove the plaintiffs from their home.

41. The defendants' condemnation of the plaintiffs' home amounted to an illegal eviction of the plaintiffs from their home.

42. Unfortunately, the actions of the defendants in this matter are part of a pattern, practice, policy and custom that has been, and still is, utilized by TOB.

43. Plaintiffs have now discovered and investigated many instances where TOB has engaged in nearly identical improper behavior in executing illegal evictions many times over. Several of those instances have resulted in lawsuits that are now pending in federal court in the Eastern District of New York (E.D.N.Y).

44. For example, in the E.D.N.Y. case of Spradley v. TOB, Mr. Spradley was the owner of the residence in question. The residence became the subject of a foreclosure action. During that process, employees of TOB and police officers from SCPD appeared at Mr. Spradley's home and summarily declared that he was "squatting" at the home and the home was condemned, and he was arrested for trespassing. Mr. Spradley was not permitted to retrieve his and his family's belongings resulting in the loss of virtually all

of his belongings. The TOB improperly condemned the property and evicted Mr. Spradley. A civil case is now pending in E.D.N.Y. for the harm suffered by Mr. Spradley.

45. Another case example in the E.D.N.Y. captioned McCrae v. TOB et.al, the plaintiffs were illegally evicted from their home despite more than ample evidence that the plaintiffs were rightfully in possession of their home. In the McCrae case, the defendants claimed that the property was condemned and that the plaintiffs were "squatters" at the home. However, it was clear that the property was not condemned and the plaintiffs had obviously been in possession of the property for more than 30 days. In that case the defendants claimed to obtain an affidavit from the homeowner to justify their actions, however, it was made clear in discovery that the defendants only obtained the alleged homeowner affidavit after they illegally evicted the family from the property.

46. Another case pending in E.D.N.Y, captioned Perkowski v. TOB, involved police officers of SCPD executing a search warrant. During the execution of the search warrant, SCPD contacted TOB to request that the property be condemned. TOB appeared and created bogus grounds upon which to condemn the property. The bogus condemnation was overturned and the plaintiff in that case was able to litigate his way into gaining access to his property several weeks after the initial bogus condemnation. However, by the time he regained access to his property water had been flooded into the home, and all of his belongings had been either stolen or destroyed. That case is still pending in E.D.N.Y.

47. Another case also pending in the E.D.N.Y. captioned Shea v. TOB involves an illegal condemnation of a property. TREJO is also a named defendant in that action. She is accused of improperly condemning the property and then later returning to the property and vandalizing the home according to a neighbor who observed the defendant pouring water into the oil tank of the home. The home was also flooded with water.

48. Plaintiff has discovered countless examples of the same policy and custom of TOB. The abuse by TOB has become so notorious and widespread that there is now a Facebook group called "Brookhaven Citizens Against Overzealous Code Enforcement" who are organizing and documenting countless illegal evictions and various other civil rights violations that are regularly practiced by TOB.

49. Defendant TOB has failed to properly train and supervise defendant TREJO.

50. It was the policy and custom of TOB to employ certain town officials, including defendants TREJO.

51. It was the policy and custom of TOB to authorize, encourage, permit, or tolerate certain employees, including defendant TREJO to engage in illegal and biased administration of law and services. This policy and custom that was authorized, encouraged, permitted, or tolerated by TOB directly and indirectly caused the constitutional violations suffered by the plaintiffs in this action.

52. At all pertinent times, TOB and their supervisors failed or refused to adequately train, direct, supervise, or control defendant TREJO so as to prevent the policies and customs that resulted in the violations of plaintiffs' constitutional rights.

53. TOB was deliberately indifferent to the fact that inaction would obviously result in the violation of plaintiffs' constitutional rights as described above.

54. In the days after plaintiffs were illegally evicted out of their home, DAWN appeared at the TOB and at TOB forums to complain about the actions of TREJO. Defendants ROMAINE and FOLEY indicated that they fully supported the actions of TREJO in condemning the plaintiffs' property.

55. The failure of TOB to train, direct, supervise or control TREJO was the proximate cause of the harm suffered by the plaintiffs.

56. Defendant TREJO was acting within the scope of her employment and pursuant to the policies and customs of TOB. These policies and customs were enforced by TOB, and were the moving force, proximate cause, or affirmative link behind the conduct causing the plaintiffs' injuries. TOB is therefore liable for the violation of plaintiffs' constitutional and statutory rights.

57. The TOB is well aware of the practices and tactics being utilized by defendant TREJO and has acquiesced in her conduct by allowing TREJO to continue to abuse the residents of the town.

58. The defendant is not entitled to qualified immunity for the complained of conduct.

59. Defendant TREJO is clearly utilizing the regularly issued process of condemnation with intent to harm the plaintiffs in order to achieve the improper collateral objective of eviction, which is outside the legitimate ends of condemnation.

60. Notice of claim was timely filed in this matter.

61. Defendants engaged in conduct that was negligent, reckless, intentional, and/or malicious.

62. The plaintiffs have been harmed as a result of the actions of the defendants described above. Plaintiffs have suffered loss of property, economic loss, extreme emotional distress, mental anguish, anxiety, physical pain, and suffering as a result of all of the defendants' actions including the unconstitutional invasion and seizure of their home.

## AS AND FOR A FIRST CLAIM FOR RELIEF
## 4TH AMENDMENT – ILLEGAL ENTRY AND SEARCH

63. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

64. The defendants have deprived plaintiffs of their rights under color of law as guaranteed by the Fourth Amendment to the U.S. Constitution and applied to the defendants under 42 U.S.C. §1983.

65. By illegally entering and searching the plaintiffs' home without a warrant or possessing a valid exception to warrantless entry, defendants have deprived plaintiffs of their rights as guaranteed by the Fourth Amendment to the U.S. Constitution.

66. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs Fourth Amendments rights under color of law.

67. As a proximate result of defendants' actions, plaintiff has sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiff economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

### AND AS FOR A SECOND CLAIM FOR RELIEF
### 4TH AMENDMENT – ILLEGAL SEIZURE

68. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

69. The defendants have deprived plaintiffs of their rights under color of law as guaranteed by the Fourth Amendment to the U.S. Constitution and applied to the defendants under 42 U.S.C. §1983.

70. By illegally seizing both, the premises and all of the plaintiffs' property contained within the premises, defendants have deprived plaintiffs of their rights as guaranteed by the Fourth Amendment to the U.S. Constitution.

71. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs Fourth Amendments rights under color of law.

72. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiffs economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

### AND AS FOR A THIRD CLAIM FOR RELIEF
### 14TH AMENDMENT – DUE PROCESS OF LAW

73. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

74. The defendants have deprived plaintiffs of their rights under color of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution and applied to the defendants under 42 U.S.C. §1983.

75. By condemning and seizing the plaintiffs' property without a pre-deprivation hearing or any other safeguard designed to protect against abuses by the state, or even following the procedures as indicated in the Town code, the defendants have deprived plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution.

76. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs Fourteenth Amendment rights under color of law.

77. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiffs economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

### AND AS FOR A FOURTH CLAIM FOR RELIEF
### ABUSE OF PROCESS – SECTION 1983

78. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length

herein.

79. The defendants have engaged in an abuse of process under Section 1983.

80. The defendant employed the regularly issued legal process of condemnation to remove the plaintiffs from their home. That act was done with an intent to harm the plaintiffs without excuse or justification. And the purpose of the condemnation was to obtain the collateral objective of eviction of the plaintiffs from their home, which is outside the legitimate ends of a condemnation.

81. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs' rights under color of law.

82. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiffs economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

### AND AS FOR A FIFTH CLAIM FOR RELIEF
### FAILURE TO PROPERLY TRAIN OR SUPERVISE – SECTION 1983

83. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

84. The TOB defendants have failed to properly train or supervise TREJO which has resulted in violations of plaintiffs' rights under both the Fourth and Fourteenth Amendments to the U.S. Constitution.

85. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs' rights under color of law.

86. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiffs

economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

### AND AS FOR A SIXTH CLAIM FOR RELIEF
### EIGHTH AMENDMENT – EXCESSIVE PUNISHMENT

87. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

88. The defendants have deprived plaintiffs of their rights under color of law as guaranteed by the Eighth Amendment to the U.S. Constitution and applied to the defendants under 42 U.S.C. §1983.

89. By effectively seizing portions of the plaintiffs' home for years, the defendants have engaged in conduct that is both a cruel and excessive punishment that has deprived plaintiffs of their rights as guaranteed by the Eighth Amendment to the U.S. Constitution.

90. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs' rights under color of law.

91. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiffs economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

### AND AS FOR A SEVENTH CLAIM FOR RELIEF
### ILLEGAL EVICTION – SECTION 768 RPA

92. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

93. The defendants have engaged in an illegal eviction as determined by Section 768 of the New York State real property law.

94. By ordering the plaintiffs out of their home and seizing portions of the plaintiffs' home for years, the defendants have engaged in conduct that amounts to an illegal eviction.

95. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs' rights under color of law.

96. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to cause plaintiffs economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

**AND AS FOR AN EIGHTH CLAIM FOR RELIEF
NEGLIGENCE, NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS,
INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS, TRESPASS,
TRESPASS TO CHATTELS – NY STATE COMMON LAW CLAIMS**

97. Plaintiffs repeat and reallege the foregoing as if the same were fully set forth at length herein.

98. The defendants have deprived plaintiffs of their rights under color of law as guaranteed by the laws and constitution of the State of New York.

99. By ordering the plaintiffs' out of their home and effectively seizing portions of the plaintiffs' home for years, the defendants have engaged in conduct that has deprived plaintiffs of their rights as guaranteed by the laws and constitution of the State of New York.

100. Defendants acted with negligence, recklessness, and callous indifference to plaintiffs' rights under color of law.

101. As a proximate result of defendants' actions, plaintiffs have sustained immediate and permanent injuries. These injuries have caused and will continue to

cause plaintiffs economic and property loss, conscious pain and suffering, both mental and physical, emotional distress, anxiety, and mental anguish.

WHEREFORE, plaintiff respectfully requests judgment against all defendants as follows:

(A) an order awarding compensatory damages in the amount to be determined at trial, including without limitation, damages for plaintiffs' economic and property loss, physical and emotional injuries, and conscious pain and suffering;

(B) an order awarding punitive damages and/or treble damaged in an amount to be determined at trial, but in no event to be less than ten million dollars ($10,000,000.00);

(C) reasonable attorneys' fees and costs; and

(D) directing such other and further relief as the Court may deem just and proper, together with interest, costs and disbursements of this action.

Respectfully submitted,

*Aaron C. DePass*

/s/ *Aaron C. DePass*
Aaron C. DePass, Esq.
Law Office of Aaron C. DePass
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
PH: (718) 775-5264
Fax: (469) 202-4587
Email: attydepass@gmail.com