FILED
CLERK

8:06 am, Aug 08, 2023

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAWN CORRIGAN, et al.,        *     Case No. 22-CV-4688(GRB)
                             *
          Plaintiffs,        *
                             *
     v.                      *
                             *
TOWN OF BROOKHAVEN, et al.,  *
                             *
          Defendants.        *
                             *

LISA BONNER, et al.,         *     Case No. 22-CV-4690(GRB)
                             *
          Plaintiffs,        *     Long Island Federal
                             *      Courthouse
                             *     100 Federal Plaza
     v.                      *     Central Islip, NY  11222
                             *
TOWN OF BROOKHAVEN, et al.,  *     March 1, 2023
                             *
          Defendants.        *
                             *
* * * * * * * * * * * * * * * *


TRANSCRIPT OF CIVIL CAUSE FOR PRE-MOTION CONFERENCE
BEFORE THE HONORABLE GARY R. BROWN
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          AARON C. DePASS, ESQ.
                            300 Cadman Plaza West
                            12th Floor
                            Brooklyn, NY  11201


Proceedings recorded by electronic sound recording,
transcript produced by transcription service.


**Fiore Reporting and Transcription Service, Inc.**
**4 Research Drive, Suite 402**
**Shelton, CT 06484 (203)929-9992**

APPEARANCES Cont'd.:


For the Defendants:          ALEXANDER SENDROWITZ, ESQ.
                             Quatela Chimeri, PLLC
                             888 Veterans Memorial Hwy.
                             Suite 530
                             Hauppauge, NY  11788

3

1          (Proceedings commenced at 2:03 p.m.)

2          THE CLERK:  Case Civil 2022-4688, Corrigan et al,

3     v. Town of Brookhaven, et al., and calling Case Civil 22-

4     Civil-4690, Bonner v. Town of Brookhaven.

5          Counsel, please state your appearance for the

6     record.

7          MR. DePASS:  Yes, for the plaintiffs, Aaron DePass.

8          MR. SENDROWITZ:  Good afternoon, Your Honor.  For

9     the defendants in both matters, Alex Sendrowitz of Quatela

10    Chimeri.

11          THE COURT:  All right.  Counsel, Judge Brown here.

12    We are doing this via telephone, and this is a pre-motion

13    conference relating to both cases.  Now the cases are, I

14    recognize, similar and not precisely the same, so we can talk

15    about them sort of separately, but I think it makes more

16    sense to do this conference together.

17          Please keep in mind that this is a pre-motion

18    conference, but I reserve the right to deem the motions made

19    and decide them if I think that counsel has done a fair

20    enough job laying out the issues in order to save litigation

21    costs.

22          So with that said these are going to be defendant's

23    motions. So let me go to the defendant first and which case

24    would you like to start with?

25          MR. SENDROWITZ:  Your Honor, we can start with the

4

1    Bonner case.

2         THE COURT:  Sure.

3         MR. SENDROWITZ:  If it pleases the --

4         MR. DePASS:  Oh, Bonner.  I'm sorry.  I don't have

5    that open here.

6         THE COURT:  Or you want to go with Corrigan first?

7    Doesn't matter.

8         MR. SENDROWITZ:  Sure, Corrigan's fine, Your Honor.

9         THE COURT:  All right.  It's Corrigan.  Anybody

10   here for plaintiff?

11        MR. DePASS:  Yes, Your Honor.  I believe the

12   plaintiffs are here, Ms. Dawn Corrigan and Caitlin Corrigan.

13        THE COURT:  Oh, they're on the line as well.

14        MS. D. CORRIGAN:  Yes.  Hi, Your Honor.

15        MS. C. CORRIGAN:  Yes.  Hi, Your Honor.

16        THE COURT:  Excellent.  Excellent.  Good afternoon.

17   All right.

18        Good.  So why don't I ask the town representative

19   to please lay out the motion for me, please?

20        MR. DePASS:  Sure, Your Honor.  And before we get

21   started with that, after further internal discussion and

22   review, we're not going to be moving to dismiss on the

23   seizure of the premises, solely, as well as the Monell

24   related to that particular claim.

25        THE COURT:  Wait, wait.  So let's see what that

1    means.  Hold on.

2         So that's the fourth -- the first cause of action,

3    the Fourth Amendment, illegal entry and search -- or no,

4    sorry, sorry, sorry.  It's the second cause of action, which

5    is the illegal seizure, yeah?

6         MR. SENDROWITZ:  The seizure of the premises.

7    There's an allegation that there was a seizure of the

8    premises and a seizure of the personal property.  So it's

9    just going to --

10         THE COURT:  Okay.

11         MR. SENDROWITZ:  -- just related to --

12         THE COURT:  So your motion is going to be limited

13    to the personalty inside the seized property?

14         MR. SENDROWITZ:  Correct.

15         THE COURT:  All right.  That's a highly twined

16    distinction.  All right.  So why don't you go ahead and get

17    started then and we'll go through it step by step and see

18    what we can do.  All right?  Go ahead.

19         MR. SENDROWITZ:  Thank you, Judge.

20         So with regard to the illegal entry and search,

21    there was a separate matter that is still currently pending

22    in the district court, Sixth District, pertaining to the same

23    set of facts, and the judge in that case did render a

24    decision after a hearing, pertaining to the entry, and there

25    was a tenant that permitted Theresa Trejo to enter into the

1    basement.

2              THE COURT:  Okay.

3              MR. SENDROWITZ:  And we believe as it relates to

4    that particular portion of the home, the -- there was no

5    constitutional violation.  There was no illegal entry or

6    search.

7              And then with regard to the balance of the home, we

8    believe that Theresa Trejo would be entitled to qualified

9    immunity, even if unreasonable -- whether it would be

10   reasonable even if mistaken, to believe that Ms. Trejo would

11   be entitled to search the home when she was granted

12   permission for a part of the home.

13             THE COURT:  All right.  And this was the case --

14   forgive me, because these cases are very similar.  This was -

15   - was there some police action as well?  In other words,

16   there was a break in?  Or am I thinking of the other case?

17             MR. SENDROWITZ:  So this is the -- this is the case

18   with certain police activity.

19             THE COURT:  Yeah.  Okay.  So when you say there's a

20   Sixth District decision, were the Corrigans parties to that

21   decision, because I don't have that in front of me?

22             MR. SENDROWITZ:  That's correct, Your Honor, but it

23   was just Dawn Corrigan.  She is the owner of the home.

24             THE COURT:  Okay.  So is this -- okay.

25             I'm going to use the wrong term here, but is this a

1   collateral estoppel matter at this point, where there was

2   some sort of factual preclusion?  What are we looking at here

3   because I don't know the state court determination?

4          MR. SENDROWITZ:  I believe it would be a res

5   judicata type preclusion, considering that there was an

6   argument already presented between the parties, and there was

7   a full hearing pertaining to whether the entry into the

8   basement was proper or not, and there was a determination

9   that there was a valid tenant there who did grant permission

10  to Theresa Trejo to enter the home.

11         THE COURT:  All right.  Just freeze there for a

12  second.  Let me go to plaintiff's counsel.

13         What do you have to say about this piece?

14         MR. DePASS:  Yes, Your Honor.  Just specifically

15  regarding that matter, there was a hearing regarding the

16  viability of there being a tenant.

17         We believe that the facts clearly indicated that

18  Mr. Nealy was not a tenant at that time.  We had video

19  evidence.  We had text evidence.  We had testimony, and we

20  believe that all of that clearly indicated that Mr. Nealy was

21  not a tenant at that time.

22         We did receive, I guess what I would call, I guess,

23  an interim order, that did permit Mr. Nealy to testify for

24  purposes of trial.  But the trial has begun and they did not

25  bring Mr. Nealy back to again question about what we think

8

1   was clear evidence of his not being a tenant.  So we do not

2   believe that the -- this be an interim order that --

3            THE COURT:  Just confusing to me.  When you say

4   he's not a tenant, was he living in the house?

5            MR. DePASS:  No, he wasn't.

6            THE COURT:  So I'm confused.  So some random person

7   called and said, there's a break-in at the house, come over,

8   and it wasn't legitimate (indiscernible)?

9            MR. DePASS:  Right.  So, I'm sorry, Your Honor.

10           So for clarity, he was not living at the house on

11   the date of the incident.  He had moved out several days

12   prior, and then had returned --

13           THE COURT:  But what did he do -- what did he do to

14   invite government officials into the home?

15           MR. DePASS:  He was breaking into the house with a

16   hammer, and the --

17           THE COURT:  Okay.  This is a prior tenant.  Okay.

18           MR. DePASS:  -- plaintiff --

19           THE COURT:  Yeah.  Go ahead.

20           MR. DePASS:  Yes.  Yes, he was a prior tenant.

21   Yes.  And the plaintiff, Caitlin Corrigan, called the police

22   while Mr. Nealy was attempting to break into the home with a

23   hammer.

24           THE COURT:  Okay.  So --

25           MR. DePASS:  On the date in question.

1        THE COURT:  Right.  So there was certainly an

2   invitation to some form of government authority to the house

3   because there was a break in going on.  Yes?

4        MR. DePASS:  Yes, there was an invitation to the

5   police.  Not to the Town of Brookhaven.  They had no such

6   invitation.  In fact, they -- when they did appear, they were

7   specifically told that they had no permission to enter the

8   home.

9        THE COURT:  That's a little bit odd.  I don't know

10  how to process that.

11       Okay.  So let me just say this is fairly straight

12  forward because, you know, everybody's referring to an order

13  I don't have in front of me, right?  So I can't decide this

14  today. so I guess I'll hold this in abeyance pending further

15  briefing from the parties on this particular issue, which is

16  the illegal entry and search of the home alleged -- as

17  alleged as against the Town of Brookhaven and the Brookhaven

18  defendants.

19       So I mean, I have to look at the order to see what

20  it says, and then sort of figure this out.  This one is a

21  little bit more complicated, so we'll hold that one in

22  abeyance.  So why don't I go back and --

23       MR. SENDROWITZ:  Your Honor --

24       THE COURT:  Yeah.  Yeah.

25       MR. SENDROWITZ:  Yeah, I'm sorry to interrupt.  Can

1   I just state one more point on that issue?

2          THE COURT:  You can state -- you can make any point

3   you want and I will hear you out, but just remember, you have

4   a lot of things here --

5          MR. SENDROWITZ:  Sure.

6          THE COURT:  -- and I don't think you're going to

7   win today because you're citing me to an order you haven't

8   given me.

9          If you'd given me the order, we'd be in a different

10  position.  So why don't you send me a letter with the order

11  and then I can figure it out?  Does that make more sense?

12         MR. SENDROWITZ: Absolutely.  Sure.  Absolutely.  I

13  could do that.

14         THE COURT:  Okay.  So let's get on to the second

15  cause of action, because we've got a lot of them, which is

16  the illegal seizure of -- now, you want to limit this to the

17  personalty and not the property, correct?

18         MR. SENDROWITZ:  Correct.

19         THE COURT:  Okay.  So tell me the basis for

20  dismissing the claim as to illegal seizure of the personalty.

21         MR. SENDROWITZ:  First, there's no specific

22  allegation as to what, if any personalty was seized.  The

23  only -- so it's one conclusory statement that -- loss of the

24  personal property.  It's just reduced to that and that alone.

25  So we don't believe that there's any specificity that would

1   give a valid claim.  That's one element to it.

2          THE COURT:  Well, okay.  So as to that element, if

3   I throw you out of your house tonight, don't you have stuff

4   in there, and isn't the question of what the stuff is a

5   question of damages and not liability?

6          MR. SENDROWITZ:  Well, I think that it would relate

7   to the specificity as to what was actually seized and

8   actually taken by the town though.  Not that -- not that --

9   not relating to the damages, but to the liability as to

10  whether --

11         THE COURT:  But wouldn't it be --

12         MR. SENDROWITZ:  -- it was actually seized.

13         THE COURT:  -- would it be (indiscernible)secondary

14  to (indiscernible).  In other words, I am no longer letting

15  you go back into your home.  Doesn't that mean I deny you

16  access to whatever property you might have in there?

17         MR. SENDROWITZ:  I think that it's different in the

18  sense that you can't occupy the home while it's condemned as

19  opposed to retrieving certain personal property.

20         THE COURT:  I've had cases like this.  I don't know

21  that that's prudent.  I mean, here's the thing.  If I

22  essentially board up the house and say, you can't go in

23  anymore, it's dangerous in there, or whatever, you know, if

24  I've got a tuna fish sandwich in the refrigerator, you're

25  denying me access to the tuna fish sandwich.  So I don't

1    think the failure to specify the property, per se, carries

2    the day.  Do you have any other arguments on that claim?

3              MR. SENDROWITZ:  I think that relating to the

4    specific seizure, just not allowing them to retrieve the

5    property for a particular time as opposed to actually seizing

6    the property, I don't think that that would satisfy

7    liability.

8              THE COURT:  I think it's -- I think that's going to

9    be a fascinating issue when we get to the summary judgment

10   stage. So I'll deny that for now without prejudice for

11   renewal.

12             So let's move on.  Third cause of action, 14th

13   Amendment due process.

14             MR. SENDROWITZ:  Your Honor, with regard to that

15   the complaint itself does not list or argue that it was

16   pursuant to any state procedure.

17             It would be random and unauthorized, especially

18   considering what was stated with regard to how everything was

19   done and, therefore, it would be only post-depravation

20   necessary and a -- with regard to the personalty, there's

21   case law out there that indicates that a state law claim for

22   conversion or an Article 78 with regard to the property

23   itself would be sufficient.

24             And the complaint does not allege any facts that

25   would allege that the state law post-judgment remedies would

1    be -- or, I'm sorry, post-depravation remedies would not be

2    sufficient.

3         THE COURT:  Okay.  I hear you.  I see it a little

4    bit differently, but let me go to plaintiff's counsel on

5    that.  What do you have to say about the third cause of

6    action, the due process claim?

7         MR. DePASS:  Yes, Your Honor.

8         We believe that there's clear violation of the

9    plaintiff's due process.  There are procedures in place for

10   the actions that were taken by the Town of Brookhaven, and

11   none of them were followed.

12        Instead of restating everything that I did include

13   in that, in my letter, Your Honor, I would just add that the

14   concept that the defense is putting forth has been tried and

15   rejected several times already, and I guess most recently in

16   its trial before Judge Morrison regarding Mr. Prekowski (ph).

17        THE COURT:  Yeah, I have the jury sheet there, but

18   I don't think that that was a due process claim.

19        MR. SENDROWITZ:  Yeah, the due process claim was

20   thrown out, Your Honor.

21        THE COURT:  Yeah.

22        MR. DePASS:  Oh, okay.  So that must -- that was

23   not -- okay.  Their due process was not -- that was a --

24   yeah, it was a little different back then.

25        MR. SENDROWITZ:  And I'll just --

1          THE COURT:  But, you know, counsel, because that's

2    an interesting, you know, sort of pattern for this case.

3    They went to trial on unlawful seizure and unlawful search

4    and that was it.

5          So, here is the issue.  And I just want to throw

6    out this, counsel, in case I'm misreading this.  The

7    complaint seems to suggest that there was no pre-depravation

8    -- pre-depravation remedy afforded.

9          At the same time, the complaint alleges that the

10   employee involved, was involved in ultra (indiscernible)

11   extra curricular illegal activities here, and I believe in

12   such cases, courts have held that then state could not

13   provide a pre-depravation remedy because they're not

14   expecting their employees to go do that.

15         Do you have a response to that notion?

16         MR. DePASS:  Well, except for -- well, except for

17   they -- I believe that they, the town, encouraged Ms. Trejo

18   to do exactly what she's been doing, because she's been doing

19   it over, and over, and over again.  So this is not something

20   that's new to them.

21         We're alleging that it is -- we believe, is

22   egregious that she is doing that.  But she's actually -- it's

23   not like she's a rouge employee and she's doing something

24   that they don't know and sponsor.  They know and sponsor

25   exactly what she's doing.  They know it's -- it is what we're

1      claiming it is, which is a pre-depravation violation of the

2      plaintiff's rights.  But it's not --

3             THE COURT:  Yeah.

4             MR. DePASS:  -- it is not -- you know, and it's not

5      meant to be considered a rouge employee type of scenario.  It

6      is actually a pre-depravation matter, where she's summarily

7      --

8             THE COURT:  So --

9             MR. DePASS:  -- going in and --

10            THE COURT:  -- it's a little bit tricky though,

11     right?  It's a little bit of a chicken and egg problem,

12     right?

13            Maybe even -- let's assume she and her supervisor

14     are saying, yes, go out there and go kick down those doors,

15     or break into those houses or whatever.  Then the

16     supervisor's actions clearly would be unauthorized and not

17     anticipated by the entity that is the town.  Yeah?  You see

18     the -- you see the distinction?

19            MR. DePASS:  Well -- yeah.  I -- yes, I understand.

20     I understand that the town has in place, in theory,

21     protections, but they're violating them with the town's

22     knowledge, with the senior member of the town's support, and

23     therefore, it is the town that's actually doing this

24     violation.

25            THE COURT:  Oh, I hear you.  Okay.  I'm going to --

1    to the extent that you're making that argument, I think it

2    sort of blends with the *Monell* claim, and so there is sort of

3    a remedy there, but I do think that this falls into the

4    hopper that was *Palmer v. The City of New York*, which is

5    found at 564 F. Supp 3d 221, which is an Eastern District

6    case from 2021, and it --

7              MR. DePASS:  Okay.  I'm sorry.  Give me -- I'm

8    sorry.  That was -- I was just trying to write that.  *Palmer*.

9    That's *Palmer*, the *Palmer* case, *v. City of New York*?

10             THE COURT:  Yep.  Yeah.  It's 564 F. Supp 3d 221,

11   and it --

12             MR. DePASS:  Yeah.

13             THE COURT:  -- states that when the state conduct

14   in question is random and unauthorized, the state satisfies

15   procedural due process requirements so long as it provides a

16   meaningful post-depravation remedy.

17             So I'm going to find here that given that there's

18   no complaint as yet, and you know, this is all without

19   prejudice to amendment to -- and we can discuss -- those are

20   things that come up in discovery.

21             But right now, since the complaint, it seems to be

22   aimed at pre-depravation remedies, I think it falls into that

23   category.  So I'm going to dismiss the third cause of action.

24   So I'll grant the motion as to that.

25             So let me go to the fourth cause of action, and

1    I'll go back to defendant's counsel.  Why don't you tell me

2    your argument there, the abuse of process claim?

3              MR. SENDROWITZ:  Thank you, Judge.

4              The abuse of process claim, the process that's

5    alleged to be abused is the condemnation itself, which is a

6    civil abuse of process, as opposed to someone being arrested

7    or something of that nature. And in a 1983 action, that can't

8    be predicated on civil process.

9              THE COURT:  Yeah.  I will say this, that doesn't

10   make a whole lot of sense to me, but that seems to be the

11   law, so let me go (indiscernible).

12             Do you have any authority to suggest that there is

13   a malicious process claim that can be based on civil process,

14   or abuse of process claim, under 1983?  Do you have anything

15   on that?

16        (Pause)

17             THE COURT:  Plaintiff's counsel, you got anything

18   there?

19             MR. DePASS:  I'm sorry.  Say that -- I'm sorry,

20   Your Honor.  I missed that.

21             THE COURT:  The law -- and I'll give you one of the

22   cases, and I'm not sure if counsel cited this or not, but

23   *Keller* -- the *Keller* case, which is at 2020 Westlaw 1493916,

24   which is a Northern District case that was affirmed by the

25   circuit, and it says that 1983 liability cannot be predicated

1       on a malicious abuse of civil process.  Doesn't make a lot of

2       sense to me, but that seems to be the law.  Have you found

3       any authority to the contrary?  That's my question for you.

4              MR. DePASS:  Yeah.  And I think that I put in a

5       case that I found to be on point, which was the -- let me

6       just take a quick peek here.  One second, Your Honor.

7          (Pause)

8              MR. DePASS:  Yes, Your Honor.  I found that the

9       *Smith v. Nassau County* case was more controlling here, which

10      I did cite in the opposition --

11             THE COURT:  Okay.

12             MR. DePASS:  -- papers --

13             THE COURT:  Let me take a look at that.  Does it

14      indicate that it could be based on civil abuse of process,

15      though?

16             MR. SENDROWITZ:  Your Honor, in that case -- I

17      happen to know that case.  The plaintiff was arrested in that

18      case. So it didn't lead to the condemnation solely.

19             THE COURT:  All right.  Yeah, I do believe

20      plaintiffs have the better argument here supporting a civil

21      abuse of process claim.  I do not believe that can be

22      supported under 1983.  Again, I cite *Keller* as my authority

23      there, and I'm going to grant the motion to dismiss as to the

24      fourth cause of action.

25             So that brings us to the failure to supervise,

1    which for a lot of reasons has become kind of a mine field,

2    but I'll go to -- I'll go to plaintiff -- defendant's counsel

3    on that.

4              MR. SENDROWITZ:  Your Honor, with regard to the

5    failure to supervise, I think it brings back to the fact that

6    the way that the complaint reads is that it was kind of

7    random and unauthorized, and the town wouldn't be in a

8    position to supervise in this instance because the way that

9    it's alleged in the complaint is that they wouldn't have been

10   aware of it.

11             THE COURT:  Right.  But I'm sitting here, I'm

12   holding the verdict in the *Prekowski* case.  I have citations

13   to other pending cases.  At what point does that arise to the

14   level of a *Monell* pattern?

15             MR. SENDROWITZ:  Well, I think the other cases are

16   still pending, so they're just allegations at this point.  I

17   don't know that it could be relied upon until there is either

18   a verdict or a decision after motion in a plaintiff's favor.

19             And with regard to the *Prekowski* case, I don't

20   think a single incident would be sufficient to rise to a

21   policy or practice.

22             THE COURT:  Well, that's interesting, right?  If a

23   plaintiff has to wait until there are judgments in place, we

24   would never have a *Monell* case, right?  Because it has to

25   start someplace, right?  So for -- so we do have one jury

20

1       verdict in hand.  We have several pending other cases.  Isn't

2       that enough to get past a Rule 12 motion?

3              MR. SENDROWITZ:  Well, I think the other cases are

4       factually different in certain respects.  Some of the cases

5       that were cited by counsel don't relate to condemnations

6       themselves, and I think that on the one hand, I do understand

7       Your Honor's point, but on the other hand, I think that it

8       would be prejudicial to the town in the event that those are

9       thrown out, because they are just allegations at this point.

10             THE COURT:  Yes, but you know where I work, so the

11      minute that they're thrown out, you'll tell me, and then

12      we'll change it.

13             But all kidding aside, counsel, I'm looking at, for

14      example, *Bertuglia,* right?  Which is the 839 F. Supp 2d 703.

15      That's a Southern District case, which is the amended

16      complaint points to over 15 cases where city's prosecutors

17      allegedly committed the conduct.  But I do think that cases

18      go forward past -- at least to a 12 stage on alleged

19      misconduct if there's a seeming pattern.

20             And I think counsel has pointed me to a number of

21      cases where -- you know, the problem I usually find with a

22      *Monell* pattern is that the cases aren't similar, right?  But

23      these are all kind of the same thing, with the building

24      inspector condemning property, you know, without any sort of

25      process and procedure and so forth.  I'm having a hard time

1    seeing this not as a *Monell* pattern, at least as alleged.

2    Tell me why I'm wrong.

3         MR. SENDROWITZ:  Well, I think that in certain

4    respects of the cases that were cited, they relate to -- you

5    know, one of them, the *McCray* case, was not a condemnation,

6    and the other ones, they're going to be dealing with whether

7    the plaintiffs even had a constitutional right in the

8    property; whether they were proper tenants, proper owners,

9    and things of that nature.

10        So I understand that the genesis of a condemnation

11   itself being similar, I think it's different in the context

12   of having a cognizable property interest.  So those, I think,

13   are different when you're dealing -- when we're dealing with

14   constitutional violations.

15        THE COURT:  Okay.  All right.  So what I'm going to

16   say is, let's do it this way.  On the fifth cause of the

17   action, I'm going to say that -- I'm going to deny the

18   motion.

19        I think that survives as to the town on a *Monell*

20   pattern as we have it -- as we have it before us now.

21   Obviously, that's subject to change.  The discovery may point

22   to other things, you know, without prejudice to

23   (indiscernible) again, either on summary judgment or a trial,

24   or whatever.

25        But what about the motion as to the individual

1    claims?  The individual claims are actually as to the

2    supervisors, and is that what you're suggesting qualified

3    immunity bars the claim?

4              MR. SENDROWITZ:  Yes.  And also with regard to -- I

5    don't even -- I think before we get to the qualified

6    immunity, there's no allegation that these supervisors

7    violated the plaintiff's constitutional rights based upon

8    their individual actions.

9              THE COURT:  Oh, that's interesting.  Huh.  Well,

10   let me go to plaintiff's counsel.

11             Do you make such allegations as against Mr. Romaine

12   and Mr. Foley?

13             MR. DePASS:  Yes, Your Honor.  We believe that they

14   both had direct interaction with the plaintiff in this

15   matter.

16             THE COURT:  Well, I mean, here is the thing.  Your

17   subjective belief is interesting, but I'm holding your

18   complaint in my hand, so point me to paragraphs that tell me

19   that.

20             MR. DePASS:  All right.  Hold on.  Let's see where

21   we're at here.

22        (Pause)

23             MR. DePASS:  I think it is --

24             THE COURT:  Well, all right.  I'll help you along.

25   I just came across Paragraph 54, which Dawn Corrigan went to

1    the town meeting or forum, and Romaine and Foley indicated

2    that they fully supported the actions of Trejo in condemning

3    the plaintiff's property.

4              MR. DePASS:  Yes, Your Honor, that's -- that's what

5    I was looking for and you got to it before I did.

6              THE COURT:  Okay.  Look, sometimes I get lucky, so

7    --

8              MR. DePASS:  Yeah.

9              THE COURT:  -- but -- all right.  Let me go back to

10   defendant's counsel on that.

11             Why would Paragraph 54 not constitute -- albeit

12   it's somewhat conclusory, but still involvement in the

13   constitution of violation?

14             MR. SENDROWITZ:  In the 1983, with regards to

15   supervisory liability, it needs to be their own individual

16   actions that violate plaintiff's constitutional rights.  The

17   complaint is alleging that Theresa Trejo violated the rights

18   by entering the home, by condemning it and seizing it.

19             There's no allegation that Ed Romaine or Mr. Foley

20   did anything based upon their own actions that violated it.

21   Also, there's no allegation that Ed Romaine or Mr. Foley

22   would be considered Theresa Trejo's supervisor.

23             THE COURT:  Well, wait.  Hold on.

24             MR. SENDROWITZ:  I think that just the simple

25   allegation of it, they fully support the actions, that's not

1      a constitutional violation.  It would have to be their own

2      actions.

3            THE COURT:  Well, counsel, assuming the allegations

4      to be great -- to be true, it's not great.  Right?  It's

5      potentially a problem.  I understand your point.  I think

6      that is -- I think it's very, very close, but I do think that

7      Paragraph 54 is sufficient, albeit a sin, to get past the

8      individual involvement aspect of this, because it's at least

9      evidenced eventually that they were individually involved by

10     -- in supervisor positions, giving their approval to the

11     actions of the underling.

12           So for the time being, I am going to deny the

13     motion as to the individual defendants on the fifth cause of

14     action, which brings us to the sixth cause of action.

15           And let me just say to defense counsel, I don't

16     need to hear from you on this one.  I'm going to go straight

17     to plaintiff's counsel and say, isn't it true that the 8th

18     Amendment can only apply if there's a criminal action here?

19           MR. DePASS:  I'm sorry, Your Honor.  Isn't it true

20     that the 8th Amendment only applies if it's a criminal

21     action?

22           THE COURT:  Yeah.

23           MR. DePASS:  No, I don't believe so, Your Honor.  I

24     can --

25           THE COURT:  Well --

1          MR. DePASS:  -- we can -- I can brief that, but I

2     don't believe that it must only be -- I believe it has to be

3     punitive.

4          THE COURT:  Well, I don't think (indiscernible).

5     Well, I guess more --

6          MR. DePASS:  And a seizure.

7          THE COURT:  Oh, more to the point, rather than it

8     not only being criminal, you're right, there were forfeiture

9     actions that (indiscernible) disproportionality and did

10    invoke the 8th Amendment, but this case law that I'm looking

11    at, like the *Dominic* (ph) case, for example, which is at 2019

12    Westlaw 5727409 (indiscernible) --

13         MR. DePASS:  Okay.  I'm sorry.  2019?

14         THE COURT:  Yeah, it's 57 --

15         MR. DePASS:  I'm sorry.

16         THE COURT:  -- 27409.

17         MR. DePASS:  Uh-huh.

18         THE COURT:  And it's just (indiscernible).  It's a

19    bigger principle, and I'm pretty sure it's correct, that the

20    case indicates this amendment only attaches after a

21    conviction.

22         MR. DePASS:  I'm sorry, Your Honor.  Can I just

23    turn that off?  (Indiscernible.)

24         THE COURT:  No, that was a -- that was a nice

25    little musical interlude.  That's okay.

26

1          MR. DePASS:  Yeah.

2          THE COURT:  Breaks the tensions sometimes.  So --

3    but I do think it (indiscernible)  cause of action

4    (indiscernible), right?  And I think --

5          MR. DePASS:  All right.  So you --

6          THE COURT:  -- (indiscernible) that's the problem.

7          MR. DePASS:  All right.  I'm sorry.  The phone now

8    -- in addition to the musical interruption, the phone just

9    broke up on me.  Can you just repeat what you said, Your

10   Honor?

11         THE COURT:  I do think that the cases suggest that

12   this amendment only applies after conviction, so it's sort of

13   procedurally not yet ripe, I guess, if this is what you've

14   deemed sort of a punitive action, it's not done.  So

15   (indiscernible) I don't think the 8th Amendment applies.

16         MR. DePASS:  Okay.

17         THE COURT:  I'm pretty sure about that.  So I'm

18   going to grant the motion as to the 6th cause of action,

19   which is the 8th Amendment claim.

20         Bring me back to the 7th and 8th causes of action.

21   I've got to go back to defense counsel.  I'm confused as to

22   on whose behalf you're moving to dismiss for the untimely

23   filing (indiscernible).

24         MR. SENDROWITZ:  On behalf of all defendants, Your

25   Honor.

1          THE COURT:  Well, but here's my question.  When you

2     have the -- what is it, the one year and 90-day period

3     imposed by the GML, I guess it is, does that apply to

4     individual state actors, or does it just apply to the

5     municipality?

6          MR. SENDROWITZ:  It's my understanding it applies

7     to both.  It applies to the municipality, and it applies to

8     the municipal employees.

9          THE COURT:  Is it your suggestion to me that when

10    you have this sort of Rule 50 procedure that you need to do

11    with a -- which is sort of an early deposition, let's call

12    it, the claim and so forth, you have to do that for any claim

13    as against any state employee?

14         MR. SENDROWITZ:  That's my understanding, Your

15    Honor.  If you're suing a municipality or a municipal

16    employee, then that's my understanding, yes.

17         THE COURT:  Well, let me just start off.  I think

18    -- I think you have it.  I mean, assuming your time frame is

19    right and plaintiff's counsel (indiscernible) as to the town.

20    But as to the individual employees, I don't know the answer.

21    I don't know the answer.

22         I look at the statute.  The statute doesn't seem to

23    apply to the individual employees.  It talks about acts of

24    the employees, but it's -- the claim is against the town, and

25    I'm not sure you can get there (indiscernible).

1      MR. SENDROWITZ:  Well, I think that in the -- I

2    think that in the event that that would be the position, then

3    there can't be a constitutional violation in the event that

4    it's just in a personal capacity and not in a capacity as a

5    municipal employee.

6           THE COURT:  Okay.  Ah, but we're not talking about

7    constitutional violations.  We're talking about state causes

8    of action.  7 and 8 are whatever --

9           MR. SENDROWITZ:  Right.

10          THE COURT:  -- whatever (indiscernible).

11          MR. SENDROWITZ:  But I -- but Theresa Trejo --

12          THE COURT:  (Indiscernible.)

13          MR. SENDROWITZ:  -- is -- Theresa Trejo is sued in

14   her capacity as a building inspector, which lays the

15   groundwork for the constitutional 1983 action.  So in the --

16          THE COURT:  Correct.

17          MR. SENDROWITZ:  -- even that -- I don't think that

18   it would be proper for certain causes of action to be able to

19   move forward in the event that she's going to be sued just as

20   a -- in her personal capacity as opposed to other causes of

21   action that there wouldn't be any --

22          THE COURT:  Yeah.

23          MR. SENDROWITZ:  -- liability for a 1983, if she's

24   just sued for --

25          THE COURT:  (Indiscernible) that's a very

1    interesting argument for the part in Paragraph 14 where it

2    says, Trejo is sued both individually and in her official

3    capacity.  Right?  That's the problem.

4             So the answer is, I don't know and I don't --

5    actually, I suspect that the year and 90 days does not apply

6    to the suit as against the state actors (indiscernible) but I

7    could be wrong about that.

8             So what I'm going to do for today is I'm going to

9    deem as made and grant the motion as to the town -- well,

10   before I do that, let me just ask the plaintiff's counsel.

11            Is he right about the year and 90 days?  You're

12   outside that time frame.  Am I right?

13            MR. DePASS:  Yeah.  Yes.  Yes, Your Honor.

14            THE COURT:  Okay.

15            MR. DePASS:  Yes.

16            THE COURT:  Thank you for that.  I mean, we have

17   enough to fight about.  We can fight about things

18   (indiscernible).

19            MR. DePASS:  Right.

20            THE COURT:  So I'm going to dismiss the 7th and 8th

21   claims.  They're the same thing, causes of action as against

22   the town.  I'm happy to let counsel brief the additional

23   issue of whether that dismissal should also apply to the

24   state employees.  I suspect it doesn't, but there are no --

25   and none of us do, so -- so when you're going to send me more

1      information, I presume you are, about the 4th Amendment

2      decision that was rendered here by the state court, whatever

3      else you want to tell me about that, you could also send me

4      more information about that.

5              So I'll defer ruling on the motions on the first

6      cause of action, and the 7th and 8th causes of action as it

7      applies to the individual defendants.

8              MR. SENDROWITZ:  And, Your Honor, in the event of

9      that, I do have more substantive arguments as it relates to

10     on the 8th cause of action for negligence and the negligent

11     infliction of emotional distress and intentional infliction

12     of emotional distress as well.  Do you want me to put that

13     forth now?

14             THE COURT:  Include -- no, include them.  I do not

15     hold myself out as a scholar on the state's negligence law,

16     so you'll have to educate me.  Yes?

17             MR. SENDROWITZ:  Sure.  So I'll brief that.

18             THE COURT:  Okay.  Yeah, so you'll brief that, and

19     brief the -- whatever you want to -- else you want to give me

20     on the 4th Amendment search claim, right, because you have

21     more authority including new state -- the state opinion and

22     so forth.  So we can resolve that.  But before we get to

23     that, what else are you going to submit?  Does that -- do my

24     rulings resolve everything you're going to raise as to the

25     Corrigan case?

| | |
|---|---|
| 1 | MR. SENDROWITZ:  It does, Your Honor.  Thank you. |
| 2 | THE COURT:  Okay.  Good.  So let me ask defense |
| 3 | counsel, how long do you want to submit something on the |
| 4 | remaining causes of action? |
| 5 | MR. SENDROWITZ:  Would two weeks be okay, Your |
| 6 | Honor? |
| 7 | THE COURT:  I'm feeling quite generous today.  Two |
| 8 | weeks would be fine with me. |
| 9 | And how long would plaintiff's counsel like to |
| 10 | respond to that? |
| 11 | MR. DePASS:  Probably another -- let's see.  What |
| 12 | is two weeks for this?  Let me just take a look at my |
| 13 | calendar here. |
| 14 | THE COURT:  Sure.  Take your time. |
| 15 | MR. DePASS:  Let's see.  All righty.  So two weeks |
| 16 | puts us at the 15th.  I think I'm out -- |
| 17 | THE COURT:  Just give me a date.  Whatever. |
| 18 | Whatever. |
| 19 | MR. DePASS:  Yeah, Your Honor.  I'm sorry.  I'm |
| 20 | going to be out for a couple of weeks at the end of March. |
| 21 | That's my birthday. |
| 22 | THE COURT:  Well, we're big on (indiscernible) |
| 23 | birthdays.  Don't worry about it.  That's good. |
| 24 | MR. DePASS:  Okay.  Can we get out to the 12th of |
| 25 | April?  We should be fine, Your Honor. |

32

1          THE COURT:  Sure.  April 12th, and --

2          MR. SENDROWITZ:  Your Honor --

3          THE COURT:  -- counsel (indiscernible).

4          MR. SENDROWITZ:  -- Your Honor,  would I be able to

5    -- would I be able to get a little bit of an extension if

6    we're going to give counsel to the --

7          THE COURT:  Sure.

8          MR. SENDROWITZ:  -- 12th of April?

9          THE COURT:  Sure.  Just tell me what you need.

10          MR. SENDROWITZ:  I'd just ask for maybe -- let me

11    just look at my calendar real quick.  15th.  Until the -- I

12    could do the 17th.  Just an extra two days until that Friday.

13          THE COURT:  That's fine.  He'll respond on the

14    12th.  And if you have any brief reply, do it a week after he

15    responds.  Sound good?

16          MR. SENDROWITZ:  Thank you, Judge.

17          THE COURT:  Okay.  Good.  So that's to resolve I

18    think everything on the Corrigan case.  The Corrigan

19    plaintiffs are on the phone.  You're free to stay on the

20    phone because this is a public proceeding.  You're happy to

21    stay.  Are we waiting for the other plaintiffs?  Are they

22    going to join us?

23          MR. DePASS:  No, Your Honor.

24          THE COURT:  Okay.  Good, so we can just argue that.

25    And I've got to say, it's very similar, although their facts

1    are a little bit different on Bonner than on Corrigan, but

2    let's go back.  I guess I'll start -- well, let's talk about

3    -- so we're looking at the motion.  Again, I'm reserving the

4    right to (indiscernible) and rule on them so we could try to

5    simplify this.

6            And so on the 4th Amendment, illegal search and

7    entry claim, what are you doing there?  I'm going to go to

8    defendant's counsel.  What are you -- what's your motion say

9    there?

10           MR. SENDROWITZ:  Your Honor, with regard to -- and

11   this is going to relate to a handful of them -- but the

12   plaintiffs in that case, the Bonner case, they were not the

13   tiled owners.  There was a foreclosure action and they filed

14   a deed that was transferred back to the bank.  There is no

15   allegation that they had any agreement with the bank to --

16           THE COURT:  Wow.

17           MR. SENDROWITZ:  -- live there, be there.  So

18   there's no constitutional or cognizable right for them to

19   even remain in this home.  They didn't own it.  So there is

20   no constitutional deprivation.

21           THE COURT:  Wow, that's really interesting, but

22   that, you definitely have to put papers in on because I've

23   got to look at the deed and --

24           MR. SENDROWITZ:  Sure.

25           THE COURT:  -- other (indiscernible).  I

34

1    (indiscernible) counsel, you might have some other materials

2    to submit on that as well, yes?

3              MR. DePASS:  Yes, Your Honor.

4              THE COURT:  All right.  So did that cover actually

5    everything on this case?  In other words, are we going to

6    have to brief the whole thing, because that would affect

7    everything in the case?

8              MR. SENDROWITZ:  Well, Your Honor, I think that

9    based upon your previous ruling in the Corrigan, we could

10   dispose of the abuse of process, which is the fourth claim.

11             THE COURT:  Yeah.

12             MR. SENDROWITZ:  We could dispose of the 8th

13   Amendment, which is the excess --

14             THE COURT:  Right.

15             MR. SENDROWITZ:  -- I'm sorry, the 6th, which is

16   the excessive punishment, 8th Amendment.  And then the

17   balance would be briefed.

18             THE COURT:  I think that's right.  I think that's

19   right.  For the same reasons, I will dismiss those two claims

20   only, and then you can brief the balance.  Can we do the

21   briefing on the balance on the same schedule?

22             MR. SENDROWITZ:  Is it possible to get another

23   week, which would put us at three weeks from today?  And if

24   it's okay with Your Honor, it would make it easier if I can

25   just get the extension and I could put both sets of papers

1    three weeks from today, which would bring us to the 22nd of

2    March.

3              THE COURT:  Okay, but I'm going to give counsel a

4    little more time to respond then, because he has a birthday

5    coming up.

6              MR. SENDROWITZ:  Sure.

7              THE COURT:  We've (indiscernible).

8              MR. SENDROWITZ:  Yes.  Not a problem with that.

9              THE COURT:  So, counsel, if he gets both sets of

10   papers on the 22nd, when would you like to -- March 22nd,

11   when would you like to respond with, let's do everything,

12   yeah?

13             MR. DePASS:  We'll just -- right.  If we're going

14   to do everything all at once, can we just push it out then

15   another week?  That gives me -- I guess maybe the end of the

16   week, to the 21st.

17             THE COURT:  Correct.  That's fine.

18             MR. DePASS:  (Indiscernible.)

19             THE COURT:  So April 21st, you'll submit your

20   response and any reply, I'm just going to get -- counsel, I

21   don't need a huge reply, but if defendants have any reply

22   papers, a week -- you know, send me a letter and tell me he's

23   wrong about X, Y, or Z, or whatever.  Yeah?

24             MR. SENDROWITZ:  Sure.

25             THE COURT:  Okay.  Good.  I will probably not reply

1    with oral argument.  I will probably just do a written order

2    on what remains.  The transcript of today obviously contains

3    all my rulings, but you all heard all of them as we went

4    along, so I think we handled everything.

5                Is there anything else we need to deal with while

6    we're all together today?

7                MR. SENDROWITZ:  Nothing further from defendant,

8    Your Honor.

9                MR. DePASS:  No, I believe that's it, Your Honor.

10                THE COURT:  Okay.  And let me just say, counsel,

11    one of the reasons I rule on -- you know, in this manner, is

12    to try to save expenses and, you know, move the case faster

13    for the parties and so forth, which I think benefits

14    everybody.  I can only do that when counsel has done a good

15    job, and you both did a good job today.  So, thank you for

16    that.  Okay?

17                MR. SENDROWITZ:  Thank you, Your Honor.

18                MR. DePASS:  Thank you, Your Honor.  All right.

19                THE COURT:  All right.  And let me just say to

20    plaintiff's counsel, happy birthday.

21                MR. DePASS:  I appreciate that, Your Honor.

22                THE COURT:  All right.

23                MR. DePASS:  So much.

24                THE COURT:  All right.  Everyone have a great day.

25    Take care.

1          MR. SENDROWITZ:  Thank you.

2          MR. DePASS:  All right.  Thank you.  Bye bye.

3          MR. SENDROWITZ:  Bye.

4       (Proceedings concluded at 2:45 p.m.)

5

6    I, CHRISTINE FIORE, court-approved transcriber and certified

7    electronic reporter and transcriber, certify that the

8    foregoing is a correct transcript from the official

9    electronic sound recording of the proceedings in the above-

10   entitled matter.

11

12

13   _____              August 7, 2023

14      Christine Fiore, CERT

15         Transcriber

16

17

18

19

20

21

22

23

24

25